UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

| | |
|---|---|
| ANTHONY TYRELL WILBURN, | |
| Plaintiff, | |
| v. | CAUSE NO. 1:22-CV-144-HAB-SLC |
| DARIUS HILLMAN, et al., | |
| Defendants. | |

OPINION AND ORDER

Anthony Tyrell Wilburn, a prisoner without a lawyer, filed a motion for relief from judgment (ECF 12), which the court will construe pursuant to Federal Rule of Civil Procedure 60(b) because it was filed more than 28 days after the entry of judgment. *See Banks v. Chicago Bd. of Educ.*, 750 F.3d 663, 666 (7th Cir. 2014). Under Rule 60(b), "the court may relieve a party . . . from a final judgment . . . for . . . mistake, inadvertence, surprise, or excusable neglect . . . ." Fed. R. Civ. P. 60(b)(1). The court may also grant the motion for "newly discovered evidence" or "any other reason that justifies relief." Fed. R. Civ. P. 60(b)(2), (6).

In his original complaint, Wilburn alleged he was shot by Officer Darius Hillman on May 25, 2019, during the course of an arrest. He was transported to a hospital, where his wounds were stitched up, and he was discharged into the custody of the Huntington County Jail the next day with directions to follow-up with an orthopedic surgeon for a "chip fracture" removal. ECF 1 at 3. On June 1, 2019, he was scheduled to be seen at the hospital for a follow-up. He reminded a nurse of the appointment, but he

was not transported to the hospital. He claims he eventually had to learn to live with the chip fracture, which presses against his skin if he moves in a certain way. Wilburn, who filed his complaint from—and currently resides at—the Indiana State Prison, sued Officer Hillman and the Huntington County Jail for monetary damages including payment for a surgery.

Wilburn's claims were dismissed because the court determined they were time-barred. Specifically, the excessive force claim against Officer Hillman accrued on May 25, 2019, and the statute of limitations expired on May 25, 2021. Therefore, his complaint—which is dated April 20, 2022—was filed nearly a year too late. *See* ECF 10 at 2–3. Similarly, the court noted that he had not sued a proper defendant for any alleged medical claims, but, even if he had, those claims—which accrued on or around June 1, 2019—were also too late. *Id*. at 3–4. Wilburn now argues, however, that he is entitled to equitable tolling. He claims he lacked access to the courts while housed at the Huntington County Jail, the Reception Diagnostic Center, and the Indiana State Prison due to the Covid-19 pandemic and other disciplinary-related restrictions, which prevented him from filing his complaint in a timely manner.

While the statute of limitations is an affirmative defense, dismissal of a complaint is appropriate when it "contains everything necessary to establish that the claim is untimely." *Collins v. Vill. of Palatine, Ill.*, 875 F.3d 839, 842 (7th Cir. 2017); *see also Myers v. Noble*, no. 22-1642, 2023 WL 1514439, at *1 (7th Cir. Feb. 3, 2023) ("Although a plaintiff need not, in a complaint, anticipate an affirmative defense (such as the expiration of the statute of limitations), if a plaintiff pleads facts showing that he must lose under that

2

defense, a district court may dismiss the complaint on that basis."). In general, "a litigant seeking equitable tolling bears the burden of establishing two elements: (1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way." *Pace v. DiGuglielmo*, 544 U.S. 408, 418 (2005). Those circumstances must be both extraordinary and beyond the litigant's control. *Menominee Indian Tribe of Wisconsin v. U.S.*, 577 U.S. 250, 257 (2016).

According to his compliant and the exhibits Wilburn attaches to his motion, he was incarcerated at the Huntington County Jail for a year and three-and-a-half months (473 days)—from May 26, 2019, to September 10, 2020, before he was transferred to the Reception Diagnostic Center. ECF 1 at 3 and ECF 12-1 at 23. He claims generally that he lacked access to the courts while housed at the Jail, but he doesn't explain why—he simply attaches a hand-written list of grievance request numbers with no additional details (ECF 12-1 at 24). He also attaches newspaper articles regarding the timeline of the Covid-19 pandemic (*Id*. at 1–13), but he doesn't explain how the conditions of the pandemic affected the Jail generally or, more importantly, why it prevented him specifically from filing his complaint. These allegations are insufficient to suggest the type of extraordinary circumstances necessary to justify equitable tolling. *See e.g Katz v. U.S. Dept. of Lab.*, 857 Fed. Appx. 859, 864 (7th Cir. 2021) (noting that equitable tolling was not warranted where plaintiff did not explain why the Covid-19 pandemic prevented him from filing a timely appeal); *Brown v. Unknown Party*, no. 22-3128, 2023 WL 2818004, at *1 (7th Cir. Apr. 7, 2023), *reh'g denied*, no. 22-3128, 2023 WL 3310209 (7th Cir. May 8, 2023) (district court correctly ruled that general Covid-19 restrictions "were

3

not extraordinary circumstances that warranted equitable tolling"); *Ericson v. Woloszyk*, no. 1:22-CV-03418, 2023 WL 2744902, at *4 (N.D. Ill. Mar. 31, 2023) ("Courts have uniformly held that the COVID-19 pandemic by itself does not, as a matter of law and across-the-board, trigger equitable tolling.") (collecting cases)). And, even taking those articles at face value, the national Covid-19 emergency was not declared until March 13, 2020, so it could not possibly have had *any* effect for almost ten months after his arrival there. *See e.g., Madison v. U.S. Dept. of Lab.*, 924 F.3d 941, 947 (7th Cir. 2019) ("Where equitable tolling applies, it applies only so long as the [plaintiff] was diligently pursuing his rights . . ..")). Accordingly, Wilburn has shown neither an extraordinary circumstance that stood in the way of filing a complaint nor that he pursued his rights diligently during that time period.[1]

Wilburn provides additional details regarding his stay at the Indiana State Prison, which began on October 7, 2020. Again, he asserts the Covid-19 pandemic played a role in his failure to file his complaint in a timely manner. He attaches correspondence to officials from late December of 2022, wherein he requested the dates restrictions were put into place "concerning social gatherings, due to Covid-19." ECF 12-1 at 21–22. In response, he was directed to check with the law library.[2] Even

---

[1] In a similar vein, Wilburn claims generally that "absolutely no access to courts is granted/allowed" at the Reception Diagnostic Center, where he was incarcerated for twenty-seven days—from September 10, 2020, to October 7, 2020. ECF 12-1 at 23. But, he doesn't provide any details about how he was prevented from filing his complaint while there. In any event, even removing those twenty-seven days from the analysis, Wilburn's argument regarding equitable tolling is unavailing for the reasons set forth in this order.

[2] The response states, "I am unclear what you are asking for. This is a very general request. When it comes to the law library, write there." ECF 12-1 at 21.

4

assuming social gatherings were restricted at some point, this doesn't establish Wilburn was prevented from filing his complaint. *See Katz*, 857 Fed. Appx. at 864; *Brown*, no. 22-3128, 2023 WL 2818004, at *1; *Ericson*, no. 1:22-CV-03418, 2023 WL 2744902, at *4.

He also argues that lockdowns for the murder of a guard and an inmate interfered with his ability to access the courts. He attaches a letter dated June 1, 2022, from a prison official, in response to his request regarding lockdown dates. ECF 12-1 at 18. It states, in full:

> This is to confirm receipt of your correspondence for the days A Cell House was locked down from January 1, 2021, to present. I will gladly send you the dates. Please be aware offenders have access to the Law Library during a lock down. You would need to send correspondence to the Law Library, and they will process your request as they handle the request for offenders in a restrictive housing unit. You also have a tablet provided by GTL for researching case sites (sic) and the courts do accept handwritten documents of filings.
>
> > 00-01-102, Offender Access to Courts
> > > Offenders housed in restrictive status housing units, protective custody, a lockdown unit, an idle housing unit, or whose movement is restricted shall be allowed access to legal reference material.
>
> The dates your unit (A Cell House) was locked down from January 2021 to present are:
> January 21, 2021 – July 9, 2021
> September 27 – September 28, 2021
> November 3, 2021 – November 15, 2021

*Id*. Wilburn does not allege he was prevented from utilizing a tablet, corresponding with the law library, or submitting a handwritten complaint to the court during the combined six-months of lockdown (182 total days). Nor does he suggest he attempted to draft or file his complaint at any time prior to the lockdowns. His general averment

that the "lockdowns" interfered with his ability to file a complaint is insufficient to establish equitable tolling. *See e.g., Gray v. Zatecky*, 865 F.3d 909, 913 (7th Cir. 2017) (affirming district court's denial of equitable tolling where prisoner complained that his access to the law library was constrained "due to various institutional lockdowns ranging from (2) weeks up to (10) months, with (2) lockdowns in the past (3) months lasting a total of (3) weeks"); *Magee v. Butler*, no. 14-CV-6879, 2015 WL 5951877, at *6 (N.D. Ill. Oct. 13, 2015) (collecting cases and finding that inmate was not entitled to equitable tolling because he only made "conclusory allegations" regarding lockdowns and did not provide specifics about why he needed access to the law library or how the lockdowns impacted his ability to file a timely petition).

Moreover, according to Wilburn's own submissions, the lockdowns ended on November 15, 2021, but his complaint was not filed until April 20, 2022.[3] He doesn't provide any reason why he failed to file his complaint during those subsequent five-and-a-half months (156 days), so it can't be said that he was diligent in pursuing his claims. *See e.g., Famous v. Fuchs*, 38 F.4th 625, 634 (7th Cir. 2022), *cert. denied*, 143 S. Ct. 794 (2023) ("It is sufficient to say that the district court was correct to hold that, despite these problematic time periods, [plaintiff] still had adequate time when he was in control of his file and did not diligently pursue his legal rights."); *see also Brown*, no. 22-3128, 2023 WL 2818004, at *1 (noting that plaintiff's claims were properly dismissed because he did not file suit within a "reasonable time" once the "obstacle that

---

[3] The complaint was entered onto the docket on April 25, 2022, but Wilburn receives the benefit of the prison mailbox rule as of the date of his filing. ECF 1 at 4.

6

prevent[ed] filing a suit [wa]s removed"). Thus, after reviewing the additional information presented in Wilburn's motion, his argument regarding tolling does not warrant relief, so the motion for reconsideration will be denied. *See Myers*, no. 22-1642, 2023 WL 1514439, at *1–2 (affirming dismissal of inmate's complaint where plaintiff pled facts showing his claim was time barred and, after dismissal, the district court had properly considered—and rejected—his post-judgment equitable tolling arguments).

Wilburn also filed a motion for leave to amend along with a copy of a proposed amended complaint. ECF 13. The Seventh Circuit has explained that, unless a final judgment is set aside or vacated, a plaintiff may not amend his complaint pursuant to Federal Rule of Civil Procedure 15(a). *Sigsworth v. City of Aurora, Ill.*, 487 F.3d 506, 512 (7th Cir. 2007) (citing *Paganis v. Blonstein*, 3 F.3d 1067, 1073 n.8 (7th Cir. 1993)). A district court may deny a Rule 60 motion without first addressing the merits of a motion to amend where the former is "doomed to denial." *Id*. (quoting *Helm v. ADR Tr. Corp.*, 84 F.3d 874, 879 (7th Cir. 1996)). For the reasons set forth above, the motion can be denied on that ground alone.

Moreover, even if the court did consider the merits of his request to amend and the proposed amended complaint itself, the motion would be denied because it is futile. *See e.g., Sound of Music Co. v. Minnesota Min. & Mfg. Co.*, 477 F.3d 910, 922 (7th Cir. 2007) (stating that for an amendment under Rule 15(a) "a district court may deny a plaintiff leave to amend if 'there is undue delay, bad faith[,] or dilatory motive . . . [, or] undue prejudice to the opposing party by virtue of allowance of the amendment, [or] futility of amendment' ") (quoting in part *Park v. City of Chicago*, 297 F.3d 606, 612 (7th Cir. 2002)).

7

As in his original complaint, Wilburn alleges he was shot by Officer Darius Hillman on May 25, 2019, during the course of an arrest. He was walking down the street in Huntington County, Indiana at approximately 11:59 PM when he heard someone yell, "Stop right there." ECF 13-1 at 2. Because it was dark and he could not see the officer, he turned and ran. He eventually realized it was a police officer, so he stopped and raised both hands. Officer Hillman ordered him to show his hands, to which Wilburn replied that they "were in fact already visible." *Id*. Officer Hillman fired his weapon, hitting Wilburn on his right elbow. He fell to the ground, and Officer Hillman fired three more rounds, two of which struck him.

Wilburn was then transported to the hospital. A gunshot wound repair was performed, and he was discharged into the custody of the Huntington County Police Department the next day with directions to follow-up for a "chip fracture." *Id*. at 3. Wilburn states this information was "brought to then Jail Commander Kyle's attention." He claims he was denied access to the chip removal for "unknown reasons" and has been suffering due to this negligence. He has sued the Huntington Police Department, Officer Hillman, and Jail Commander Kyle for a declaratory judgment and monetary damages.

As set forth in detail in the court's previous order (ECF 10) and as expanded on above, any claim concerning the use of excessive force during Wilburn's arrest cannot proceed under 42 U.S.C. § 1983 because it is untimely. Suits filed under § 1983 borrow the statute of limitations for state personal injury claims, which in Indiana is two years. *Richards v. Mitcheff*, 696 F.3d 635, 637 (7th Cir. 2012). Here, the alleged excessive

8

force accrued in May of 2019. By the time Wilburn filed suit in April of 2022, almost three years had passed, and he has not provided a basis for applying equitable tolling. Thus, these claims are time-barred.

Wilburn's medical claims are slightly different than those presented in his original complaint.[4] Even if the new claims are not specifically time-barred, he has still failed to allege a viable constitutional violation against any of the defendants. As a pretrial detainee at the time of the events in question, Wilburn's rights arise under the Fourteenth Amendment. *Miranda v. Cty. of Lake*, 900 F.3d 335, 352 (7th Cir. 2018) (citing *Kingsley v. Hendrickson*, 576 U.S. 389 (2015)).

> The Due Process Clause of the Fourteenth Amendment imposes obligations on government officials to safeguard the health and safety of pretrial detainees, and section 1983 provides a cause of action for detainees . . . to vindicate those constitutional guarantees. To state a claim for inadequate medical care, a complaint must allege that: (1) there was an objectively serious medical need; (2) the defendant committed a volitional act concerning the [detainee]'s medical need; (3) that act was objectively unreasonable under the circumstances in terms of responding to the [detainee]'s medical need; and (4) the defendant acts purposefully, knowingly, or perhaps even recklessly with respect to the risk of harm.

*Gonzalez v. McHenry Cty.*, 40 F.4th 824, 827-28 (7th Cir. 2022) (citations and quotation marks omitted). "[N]egligent conduct does not offend the Due Process Clause," and

---

[4] He initially claimed he contacted Nurse Ashley—whom he had not named as a defendant—about the June 1, 2019, follow-up appointment, and she said she would look into it and inform Jail Commander Kyle about the discharge paperwork. The appointment was not scheduled, however, and Wilburn claimed he had to "live with" the bone fragment under his skin. The court concluded these claims were time-barred because Wilburn acknowledged he was aware of his physical injury (the chip fracture), its cause (the lack of proper repair of the gunshot wound by the hospital), and the alleged constitutional violation (the fact that Nurse Ashley failed to facilitate the scheduled follow-up visit)—almost three years before he filed this lawsuit. ECF 10 at 3–4 (citing *Devbrow v. Kalu*, 705 F.3d 765, 768 (7th Cir. 2013)). The court also pointed out he had not stated any plausible Fourteenth Amendment medical claims against any of the individual defendants, regardless of whether they were time-barred. *Id.* at 3, n.3.

9

allegations of negligence, even gross negligence, do not state a Fourteenth Amendment claim. *Miranda*, 900 F.3d at 353. Moreover, prisoners are "not entitled to demand specific care," *Walker v. Wexford Health Sources, Inc.*, 940 F.3d 954, 965 (7th Cir. 2019), nor are they entitled to "the best care possible." *Forbes v. Edgar*, 112 F.3d 262, 267 (7th Cir. 1997).

As an initial matter, the Huntington County Police Department is not an individual or even a policy-making unit of government that can be sued under 42 U.S.C. § 1983. *See McMillian v. Monroe County*, 520 U.S. 781, 786 (1997) (local government liability under § 1983 is dependent upon state law); *Sow v. Fortville Police Dep't*, 636 F.3d 293, 300 (7th Cir. 2011) ("[T]he Indiana statutory scheme does not grant municipal police departments the capacity to sue or be sued."). As to Officer Hillman and Jail Commander Kyle, there is no indication either individual was personally involved in Wilburn's medical care or lack thereof. For a defendant to be liable under 42 U.S.C. § 1983 he or she must have been personally involved in the violation of the plaintiff's constitutional rights. *See Mitchell v. Kallas*, 895 F.3d 492, 498 (7th Cir. 2018) (noting that liability under 42 U.S.C. § 1983 is based on personal responsibility and defendants cannot be held liable for the misdeeds of other staff); *see also George v. Smith*, 507 F.3d 605, 609 (7th Cir. 2007) ("Only persons who cause or participate in the violations are responsible."). Even crediting Wilburn's allegation that the discharge instructions were brought to Jail Commander Kyle's attention, this is insufficient to state a claim against him. "'[N]o prisoner is entitled to insist that one employee do another's job,' and the division of labor is critical to the efficient functioning of the organization." *Aguilar v.*

10

*Gaston-Camara*, 861 F.3d 626, 633 (7th Cir. 2017) (quoting *Burks v. Raemisch*, 555 F.3d 592, 594 (7th Cir. 2009). As the Seventh Circuit explained in *Burks*:

> The division of labor is important not only to bureaucratic organization but also to efficient performance of tasks; people who stay within their roles can get more work done, more effectively, and cannot be hit with damages under §1983 for not being ombudsmen. [The] view that everyone who knows about a prisoner's problem must pay damages implies that [a prisoner] could write letters to the Governor of Wisconsin and 999 other public officials, demand that every one of those 1,000 officials drop everything he or she is doing in order to investigate a single prisoner's claims, and then collect damages from all 1,000 recipients if the letter-writing campaign does not lead to better medical care. That can't be right. The Governor, and for that matter the Superintendent of Prisons and the Warden of each prison, is entitled to relegate to the prison's medical staff the provision of good medical care.

*Burks*, 555 F.3d at 595. Personal liability requires more than allegations that the defendant is a supervisor or that the defendant knew of the plaintiff's issues. Thus, Wilburn has not stated any claims against Jail Commander Kyle in his individual capacity.[5] Because the proposed amended complaint does not state any viable claims, even if the court reopened the case to address his motion to amend on the merits, it would be denied as futile.

For these reasons, the court:

(1) DENIES the motion for relief from judgment (ECF 12); and

(2) DENIES the motion to amend (ECF 13).

---

[5] Moreover, while Jail Commander Kyle would be a proper defendant for an ongoing injunctive relief claim, *see Gonzalez v. Feinerman*, 663 F.3d 311, 315 (7th Cir. 2011), any possible injunctive relief claim against him regarding Wilburn's medical care was rendered moot when Wilburn was transferred to the Reception Diagnostic Center and later to the Indiana State Prison, prior to filing this lawsuit. *See Higgason v. Farley*, 83 F.3d 807, 811 (7th Cir. 1996) ("If a prisoner is transferred to another prison, his request for injunctive relief against officials of the first prison is moot unless he can demonstrate that he is likely to be retransferred.").

SO ORDERED on September 7, 2023.

                                                          s/ Holly A. Brady
                                                    CHIEF JUDGE HOLLY A. BRADY
                                                    UNITED STATES DISTRICT COURT